LARSEN v. O'ROURKE ENGINEERING CONST. CO.

(Circuit Court of Appeals, Second Circuit.   April 4, 1910.)

No. 175.

MASTER AND SERVANT (§ 141*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—RULES.

The failure of a master to make rules is not negligence which renders him liable for an injury to a servant, unless it appears from the nature of the business that the master in the exercise of reasonable care should have foreseen and anticipated the necessity of a rule which, if observed, would have prevented the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*

Duty of master to promulgate rules as to method of work, see note to St. Louis, K. C. & C. R. Co. v. Conway, 86 C. C. A. 8.]

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by Samuel Larsen against the O'Rourke Engineering Construction Company. Judgment for defendant for costs, and plaintiff brings error. Affirmed.

Frank Moss, for plaintiff in error.

Bertrand L. Pettigrew, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The plaintiff, who was in the employ of the defendant as a "rigger," was injured February 22, 1907, while engaged in placing the foundations for the Hudson Terminal Building, bounded by Church, Greenwich, Cortlandt and Fulton streets, New York. At the time of the accident he was sitting on top of a section of shafting when the boom of the derrick which placed the shafting in position suddenly descended upon him, causing severe injuries which resulted in the loss of his right leg. The derrick was one of four, arranged

at each corner of a "traveler," and was operated by an electric engine in charge of an experienced engineer. There was also a signalman for each engine. After landing the section in question and getting a signal to slack off so that the plaintiff, Larsen, could disconnect it, the engineer, McTighe, moved to the opposite side of the traveler to answer a call of nature and while he was thus detained, O'Rourke, the signal boy, went over to the engineer's seat, where there was a small improvised stove, presumably to get warm.

Though there is no direct evidence that O'Rourke started the engine, the presumption is very strong that he must have done so, as he was seen climbing over the engine at the time in question. McTighe testified that he left the engine with the power turned off, so far as it was possible for him to do so, with the drum dogged and the friction thrown out. In such circumstances nothing but human agency could have set the engine in motion. Upon a verdict directed for the defendant every doubt must be resolved in favor of the plaintiff. On the plaintiff's proofs, therefore, the following propositions are established: First. The plaintiff, McTighe and O'Rourke were fellow servants. Second. The plaintiff was injured by the negligence of O'Rourke. Third. The plaintiff was not guilty of contributory negligence.

The case clearly falls, therefore, within the rule exempting the master for an injury to a servant occasioned by the fault of a fellow servant, unless it can be shown that the master was himself guilty of negligence. The only fault imputed to the master here is its failure to make rules.

Of course the establishment of the general proposition that the defendant should have promulgated rules for the conduct of a business so hazardous, will not aid the plaintiff unless it be shown that it was the defendant's duty to publish a rule which would have prevented the accident in question. For instance, the court might find that a mine owner should post rules stating when dynamite should be brought into the mine and under what conditions, but this would not aid an employé who was injured by the kick of a refractory mule. In the latter case, if the plaintiff relied upon the absence of rules, it would be necessary for him to show that it was the duty of the master to make rules forbidding all employés, except the drivers, to go within reaching distance of the heels of the mules. In other words, the failure of the defendant here to make any rules is negligible; the sole question being should it have made a rule which would have prevented O'Rourke from climbing over McTighe's engine and working its levers. Was the defendant bound to foresee and guard against so unlooked for a contingency?

"The failure to make rules is no proof of negligence, unless it appears from the nature of the business in which the servant is engaged that the master, in the exercise of reasonable care, should have foreseen and anticipated the necessity of such precaution." Morgan v. Hudson River Ore & Iron Company, 133 N. Y. 666, 670, 31 N. E. 234, 236; Johnson v. Prince Line, 104 App. Div. 157, 93 N. Y. Supp. 273.

Undoubtedly the theater of operation presented manifest dangers— this must always be so in the construction of the modern steel structure. No one but skilled workmen who know of the hazardous nature

of their task are supposed to be in the inclosure. We are familiar with no authority making it obligatory upon the employer to promulgate rules attempting to cover all the innumerable unforeseen accidents which may occur in such environment. Usually where rules are made the purpose is to inform each servant what his duties are; in other words, he is told what he shall do, not what he shall not do. In the case at bar a rule might have been posted to the effect that

"Signalmen shall, while on duty stand at or near the bull wheel of their respective derricks, in a position where they can at all times see signals and communicate them to the engineer."

Such a rule would not have prevented the present accident. Was the defendant required to go further and provide by rule that "signalmen shall not leave the vicinity of the bull wheel while the work is progressing and they shall not clamber over the engines on the traveler where they are employed or move any of the levers of said engine or attempt to operate the same"? It is doubtful if even such a rule as this would have prevented the foolhardy or, perhaps, accidental act of O'Rourke. But was the defendant bound to anticipate the extraordinary accident which occurred? We think not. Rules as comprehensive as contended for by the plaintiff would be so complex and minute as to be practically ignored. In such a babel as exists during the construction of a modern many-storied building is it not safer to have for the guidance of the workmen a few general rules, clear, simple and easily enforced? Too much government is as dangerous for building corporations as for nations. The best results for each are obtained by the fewest possible laws clearly expressed and rigidly enforced.

The judgment is affirmed.